MARK J. BOURASSA, ESQ. (NBN 7999)
**THE BOURASSA LAW GROUP**
2350 W. Charleston Blvd.
Las Vegas, Nevada 89102
Telephone: (702) 851-2180
Facsimile: (702) 851-2189
Email: mbourassa@blgwins.com

*Attorney for Plaintiff and the Putative Classes*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
***

| | |
|---|---|
| CHARLES BEZAK, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REAL BROKER, LLC d/b/a FOREVER HOME LV, a Texas limited-liability company; NICK DEVITTE, an individual,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff CHARLES BEZAK (hereinafter "Plaintiff") brings this Class Action Complaint on behalf of himself, and all others similarly situated, against Defendants REAL BROKER LLC d/b/a FOREVER HOME LV (hereinafter "FOREVER HOME LV") and NICK DEVITTE ("Devitte") (collectively, "Defendants") alleging as follows based upon information, belief and investigation of counsel, except as to the allegations specifically pertaining to him, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This action arises out of the marketing practices of Defendants and their present, former, and/or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or related agencies. Defendants have violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TCPA") by

contacting Plaintiff and similarly situated individuals on their cellular telephones for purposes of "telephone solicitation" as defined in 47 U.S.C. § 227(a)(4).

2. Defendants sent telemarketing text messages advertising FOREVER HOME LV's services to individuals on the National Do-Not-Call Registry in direct violation of regulations set forth by the Federal Communications Commission ("FCC") under 47 C.F.R. § 64.1200(c)(2).

3. Accordingly, Plaintiff brings this action on behalf of himself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

4. This court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

5. This Court has personal jurisdiction over Defendants because they solicit business, conduct business transactions, and committed the tortious acts alleged herein in this District, and because Defendant Devitte [resides in this District].

6. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction.

7. Venue is also proper in this District because Plaintiff has resided in this District at all times relevant to these claims such that a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

8. Plaintiff is, and at all times relevant hereto was, a citizen and resident of Clark County, Nevada.

9. Plaintiff is, and at all times relevant hereto was, a "person" as defined by 47 U.S.C. § 153(39).

10. Upon information and belief, FOREVER HOME LV is, and at all times relevant hereto was, a limited-liability company organized under the laws of the State of Texas and authorized to conduct business in the State of Nevada.

11. Upon information and belief, Defendant Devitte is, and at all times relevant hereto was, an individual residing in Clark County, Nevada and a real estate agent/licensee affiliated with FOREVER HOME LV.

12. Upon information and belief, Defendant Devitte personally sent, directed, and/or authorized the telemarketing text messages at issue, each of which was signed in his name and promoted www.ForeverHomeLV.com.

13. Upon information and belief, at all times relevant hereto Defendant Devitte acted as an agent of FOREVER HOME LV, within the scope of that agency, and for the purpose of soliciting real estate business on FOREVER HOME LV's behalf.

## TCPA BACKGROUND

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (internal citations omitted).

15. The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

16. Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

17. These regulations are codified at 47 C.F.R. §§ 64.1200(c) (1-2).

18. Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

19. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

20. The FCC was also instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

21. Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

22. The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

23. However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

24. These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

25. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

26. These policies and procedures prohibit a company from making calls for telemarketing purposes[1] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

---

[1] The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

27. Accordingly, all telemarketing calls violate the TCPA, unless Defendants can demonstrate that they have implemented the required policies and procedures.

28. There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

29. These requirements are separate but cumulative. In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

30. Though some of these requirements mention "residential" telephones, they were extended to cover calls to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

31. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition*, 28 FCC Rcd. 6574, 6584 ¶ 28 (2013).

32. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

33. Finally, text messages, such as the ones sent by Defendants are subject to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

**FACTUAL ALLEGATIONS**

34. Plaintiff is the user of a wireless cellular telephone number ending in 1908.

35. Plaintiff's telephone number has been on the National Do-Not-Call Registry since March 24, 2020.

36. Each text message Plaintiff received was sent from telephone number (775) 259-4565 and signed "Nick Devitte," with a reference to www.ForeverHomeLV.com.

37. The messages solicited Plaintiff's real estate business, including a request for "5 minutes of your time for an intro call" and a follow-up "checking back in to see if today is a better time to discuss your next move."

38. Defendant Devitte personally participated in, directed, and/or authorized the transmission of the text messages, and FOREVER HOME LV is liable for those messages because they were sent by its agent, on its behalf, and for its benefit.

39. Defendants sent Plaintiff unsolicited text messages soliciting FOREVER HOME LV's services.

40. Defendants' text messages related to FOREVER HOME LV's services.

41. Plaintiff received a total of four (4) unsolicited text messages from Defendants beginning on June 29, 2026.[2]

42. Plaintiff did not consent to receive these text messages.

43. Defendants' records or the records of third parties will reveal all of the text messages Defendants sent to Plaintiff and the Putative Class Members.

44. Upon information and belief, at the time the text messages were sent to Plaintiff and the Putative Class Members, Defendants – or those acting on their behalf – either failed to maintain written

---

[2] *See* Telemarketing Text Messages sent to Plaintiff attached hereto as Exhibit "1"

do-not-call policies and procedures that complied with the requirements of the TCPA, 47 C.F.R. § 64.1200(d), or failed to properly implement such policies and procedures, as evidenced by the continued transmission of text messages to Plaintiff despite his registration on the National Do-Not-Call Registry.

45. Defendants' above-mentioned violations were negligent.

46. Alternatively, to the extent Defendants' violations were not negligent, they were willful and knowing.

47. Plaintiff and the Putative Classes were damaged by the violations alleged herein. Their privacy was improperly invaded, Defendants' text messages temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the unwanted text messages. The text messages were annoying, a nuisance, and wasted the time of Plaintiff and the class members. *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

**DEFENDANTS' LIABILITY**

48. Upon information and belief, Defendants use automated systems to send text messages to hundreds if not thousands of consumers across Nevada and the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

49. Defendants made telephone solicitations to Plaintiff, whose number was on the National Do-Not-Call Registry at the time of the text messages. This constitutes a violation of 47 U.S.C. § 227(c) through the regulations promulgated in 47 C.F.R. § 64.1200(c).

50. Plaintiff did not provide express invitation or permission for Defendants to contact him.

51. Upon information and belief, this was not a result of error, and Defendants do not have the required procedures required under 47 C.F.R. 64.1200(c)(2)(i).

52. Defendant Devitte is personally liable for these violations because he personally sent, directed, and/or authorized the text messages. Defendant FOREVER HOME LV is liable for these violations because the text messages were sent by its agent, on its behalf, and for its benefit.

53. Accordingly, for violations of 47 C.F.R. § 64.1200(c), Plaintiff is entitled to $500 per text through 47 U.S.C. § 227(c).

54. Plaintiff is entitled to an additional $500 per text if Defendants' actions are found to be knowing or willful.

55. Upon information and belief, Defendants sent telemarketing texts to Plaintiff despite not having in place the required policies and procedures prior to sending such messages. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d).

56. Accordingly, for violations of 47 C.F.R. § 64.1200(d), Plaintiff is entitled to an additional $500 per text under 47 U.S.C. § 227(c).

## CLASS ACTION ALLEGATIONS

57. Plaintiff is a member of the Classes in that Defendants sent texts for telemarketing purposes in a one-year period to his telephone number, without his prior express written consent, while his telephone number was on the National Do-Not-Call Registry.

58. Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendants' unwanted texts and suffered a nuisance and an invasion of their privacy.

59. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of two "Classes," defined as follows:

**("Registry Class")**

> Plaintiff and all persons within the United States to whose telephone number Defendants placed (or had placed on their behalf) telemarketing calls and/or text messages when the telephone number was on the National Do-Not-Call Registry for more than 30 days at the time of the calls/texts, from four years prior to the filing of the Complaint through class certification.

**("Policy Class")**

> Plaintiff and all persons within the United States whose telephone number Defendants placed (or had placed on their behalf) telemarketing calls and/or text messages from four years prior to the filing of the Complaint through class certification

60. Excluded from the Classes are Defendants, their subsidiaries and affiliates, any entities in which any Defendant has a controlling interest, Defendants' agents and employees; any Judge and

Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

61. This proposed class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the class definition in an amended pleading or when he moves for class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

62. **Numerosity:** The members of the Classes are so numerous that the joinder of all members is impractical. Plaintiff is informed and believes, and thereon alleges, that there are at minimum, thousands of members of the Classes described above. The exact size of the Classes and the identities of the individual members are identifiable through Defendants' records maintaining written and electronically stored data showing:

a. The time period(s) during which Defendants sent the text messages;

b. The telephone numbers to which Defendants sent the text messages;

c. The telephone numbers for which Defendants had prior express written consent;

d. The purposes of such text messages; and

e. The names and addresses of Class Members.

63. **Commonality:** This action involved questions of law and fact common to the Classes. Such common questions include but are not limited to:

a. Whether Defendants used an automated system to send advertising messages;

b. Whether Defendants (or someone acting on their behalf) send telemarketing text messages;

c. Whether Defendants (or someone acting on their behalf) obtain prior express written consent;

d. Whether Defendants or the entity with which they contract send solicitation text messages to telephone numbers registered on the National Do-Not-Call Registry;

e. Whether Defendants had the proper procedures required by 47 C.F.R. 64.1200(c)(2)(i) prior to sending telemarketing text messages;

f. Whether Defendants' conduct constitutes a knowing or willful breach of the TCPA;

g. Whether Defendants' conduct is violative of 47 U.S.C. § 227(c);

h. Whether Defendant Devitte acted as an agent of Defendant FOREVER HOME LV in sending the text messages; and

i. Whether Plaintiff and Class Members are entitled to damages as a result of Defendants' wrongful conduct.

64. **Typicality:** Plaintiff's claims are typical of the claims of Class Members. Plaintiff's and Class Members' claims are based on the same legal theories and arise from the same unlawful, negligent and potentially willful conduct. Plaintiff and Class Members all did not consent to receive messages from Defendants.

65. **Adequacy:** Plaintiff is an adequate representative of the Classes. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the Class Members and have no interests antagonistic to the Class Members. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical as explained above.

66. **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all Class Members is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

67. **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendants' liability and the fact of damages is common to Plaintiff and each member of the Classes. If Defendants breached their duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

68. **Injunctive Relief:** Defendants have acted and/or refused to act on grounds that generally apply to the Class making injunctive and/or declaratory relief appropriate with respect to the Classes under Fed. R. Civ. P. 23(b)(2).

69. **Ascertainability:** Class Members are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Defendants' books and records.

**FIRST CAUSE OF ACTION**
**(Violations of the TCPA, 47 U.S.C. § 227(c) (On Behalf of Plaintiff and the Registry Class) (Against All Defendants))**

70. Plaintiff and the proposed Registry Class incorporate by this reference each and every allegation previously made in this complaint, as if fully set forth herein.

71. Defendants sent, or had sent on their behalf, text messages constituting telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

72. Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the texts.

73. Upon information and belief, Plaintiff and the Registry Class allege that these telephone solicitations were not a result of error.

74. Upon information and belief, Plaintiff and the Registry Class allege that Defendants do not have written procedures established and implemented to comply with the national do-not-call rules.

75. Upon information and belief, Plaintiff and the Registry Class allege that Defendants do not train their personnel on the existence or use of any internal "do not call" list or policy.

76. Upon information and belief, Plaintiff and the Registry Class allege that Defendants do not maintain and record a list or honor "do not call" requests.

77. Upon information and belief, Plaintiff and the Registry Class allege that Defendants do not access the national do-not-call database or utilize a process to ensure that they do not contact individuals on the registry.

78. Plaintiff and putative Registry Class members did not give written consent or express invitation for Defendants to contact them.

79. Plaintiff and putative Registry Class members do not have a personal relationship with Defendants.

80. Defendants sent telemarketing text messages to Plaintiff and putative Registry Class Members.

81. Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation message pursuant to 47 U.S.C. § 227(c)(5).

82. Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation message made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**SECOND CAUSE OF ACTION**

**(Violations of the TCPA, 47 U.S.C. § 227(c) (On behalf of Plaintiff and All Classes) (Against All Defendants))**

83. Plaintiff and the proposed putative Classes incorporate by this reference each and every allegation previously made in this complaint, as if fully set forth herein.

84. Defendants sent numerous text messages for telemarketing purposes to Plaintiff's and putative Class Members' telephone numbers.

85. Upon information and belief, Plaintiff and the putative Classes allege that Defendants do not have written procedures established and implemented to comply with the national do-not-call rules.

86. Upon information and belief, Plaintiff and the putative Classes allege that Defendants do not train their personnel on the existence or use of any internal "do not call" list or policy.

87. Upon information and belief, Plaintiff and the putative Classes allege that Defendants do not access the national do-not-call database or utilize a process to ensure that they do not contact individuals on the registry.

88. Plaintiff and putative Classes did not give written consent or express invitation for Defendants to contact them.

89. Plaintiff and putative Classes do not have a personal relationship with Defendants.

90. Defendants sent telemarketing text messages to Plaintiff and the putative Class Members.

91. Plaintiff and the putative Class Members are entitled to an award of $500 in statutory damages per telephone message pursuant to 47 U.S.C. § 227(c)(5).

92. Plaintiff and the putative Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone message pursuant to 47 U.S.C. § 227(c)(5).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, CHARLES BEZAK, on behalf of himself and all others similarly situated, prays for relief as follows:

1. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

2. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

3. An order declaring that Defendants' actions, as set out above, violate the statutes referenced herein;

4. An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

5. An award of statutory damages;

6. An award of treble damages;

7. For judgment against Defendants, jointly and severally;

8. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

9. Awarding pre- and post-judgment interest on any amounts awarded;

10. For reimbursement for all costs and expenses incurred in connection with the prosecution of these claims; and

11. Such other and further relief that the Court deems reasonable and just.

Dated this 28th day of October 2026.

**THE BOURASSA LAW GROUP**

*<u>/s/ Mark J. Bourassa</u>* ___________

MARK J. BOURASSA, ESQ. (NBN 7999)
2350 W. Charleston Blvd.
Las Vegas, Nevada 89102
*Attorney for Plaintiff and the Putative Classes*

**JURY TRIAL DEMANDED**

A jury trial is demanded on all claims so triable.

Dated this 28th day of October 2026.

**THE BOURASSA LAW GROUP**

*/s/ Mark J. Bourassa* ___________
MARK J. BOURASSA, ESQ. (NBN 7999)
2350 W. Charleston Blvd.
Las Vegas, Nevada 89102
*Attorney for Plaintiff and the Putative Classes*